Robert P. THERIAULT and Anita
B. Theriault

v.

Joseph C. MURRAY and Linda
M. Murray.

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 28, 1991.
Decided March 14, 1991.

William B. Devoe, Eaton, Peabody, Bradford & Veague, Bangor, for plaintiffs.

Joseph D. Murray and Linda M. Murray, Charleston, defendants pro se.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

Robert P. and Anita B. Theriault appeal from a judgment of the Superior Court (Penobscot County, *Alexander, J.*), contending that the court erred in relying solely on the distance calls in the Theriaults' deed to fix the southern boundary of their land in the Town of Charleston. The Theriaults' disputed southern boundary is the northern boundary of the land owned by the defendants, Joseph C. and Linda M. Murray. We agree with the Theriaults' contention and vacate the judgment.

By a deed dated June 15, 1972, the Theriaults acquired land from Merle S. Bradford, described in pertinent part as follows:

> Commencing on the County Road at the southwest corner of land now or formerly owned by Elizabeth Chute, being the generally northwesterly corner of a certain lot or parcel of land conveyed by Clarence H. Dyer to John B. Bradford, ... thence in a generally southerly direction by and along said County Road Twenty (20) rods to a stake driven into the ground; thence at right angles to said County Road in a generally easterly direction Fifty (50) rods to a stake driven

into the ground; thence at right angles in a generally northerly direction Twenty-eight (28) rods more or less to land now or formerly of Edwin Bickmore, ... thence in a generally westerly direction by and along said northerly line of said premises ... Thirty (30) rods more or less to the generally northeasterly corner of said premises now or formerly of said Elizabeth Chute; thence in a generally southerly direction by and along said easterly line of said premises of said Elizabeth Chute Eight (8) rods more or less to the generally southeasterly corner of said premises of said Elizabeth Chute; thence in a generally westerly direction by and along the southerly line of said premises of said Elizabeth Chute Twenty (20) rods more or less to the point of beginning.

A sketch of the property described in the Theriaults' deed is attached to this opinion as Appendix A.[1] Elizabeth Chute, referred to in the Theriaults' deed, previously had a smaller lot. At the time of Bradford's conveyance to the Theriaults, however, Chute had increased her holdings to include the lot bounded at its southwest corner by point "B" on the sketch. Bradford later conveyed the property south of the Theriault property to Gary Jackson, who deeded it to the Murrays in 1987. The deeds to Jackson and the Murrays defined the northern boundary of the Murray land as being the southern boundary of the Theriault land.

The instant dispute arose from two features of the 1972 deed from Bradford to the Theriaults. The deed defines the starting point both by a primary description, which corresponds to the southwest corner of the new Chute lot (point B), and by an auxiliary description which corresponds to the southwest corner of the old Chute lot (point A). The deed also describes the Theriaults' southern boundary by measurements of 20 rods along and 50 rods at right angles to a county road and by the locations of two stakes at either end of the boundary. From 1972 to 1987 the Theriaults treated the boundary as the line defined by a stake located 20 rods south of the southwest corner of the new Chute lot (point D) and another stake perpendicular to it (point E). In 1987, when the stakes no longer existed, the Murrays asserted that the boundary belonged further north. Relying on the auxiliary description of the starting point in the Theriaults' deed, the Murrays contended that the boundary was located 20 rods south of the southwest corner of the old Chute lot (point C). The Theriaults sought a declaratory judgment to determine the true location of the boundary.[2]

The Superior Court heard unrebutted testimony that the location of the original stakes still can be discerned from vegetation patterns and an old roadbed. A surveyor testified that the starting point at the new Chute lot is 20 rods from this original stake line. But if the new Chute lot is used, then the other measurements of the Theriaults' land along the abutting Bickmore and new Chute boundaries do not closely match the Theriaults' deed distance calls. If the original stake line is ignored and the old Chute lot starting point is used, then the measurements along the Bickmore and old Chute boundaries match the deed distance calls precisely. The court concluded from this precise match that the deed intended to convey to the Theriaults the land described solely by the old Chute starting point and that the distance calls in the deed prevailed over the monuments referred to in the deed. The court accordingly entered judgment for the Murrays.

■ We consistently have held that what boundaries a deed refers to is a question of law, while the location of those boundaries on the face of the earth is a question of fact. *Proctor v. Hinkley*, 462 A.2d 465, 469 (Me.1983). If facts extrinsic

---

**1.** This sketch was submitted to the court by the Murrays at the trial of this matter. For clarity, we have labeled certain points with letters.

**2.** At the trial of their declaratory judgment suit the Theriaults advanced for the first time a damages claim for hay taken from the disputed property by the Murrays. The damages claim was not properly raised, and we do not address it in this opinion. *See* M.R.Civ.P. 80A(c).

to the deed reveal a latent ambiguity, then we determine the intent from contemporaneous circumstances and from standard rules of construction. *Taylor v. Hanson,* 541 A.2d 155, 157–58 (Me.1988). A basic rule is that boundaries are controlled, in descending priority, by monuments, courses, distances, and quantity, unless this priority produces absurd results. *Id.* at 158. The physical disappearance of a monument does not end its use in defining a boundary if its former location can be ascertained. *Ricci v. Godin,* 523 A.2d 589, 592 (Me.1987); *Bailey v. Look,* 432 A.2d 1271, 1274 (Me.1981).

■ The Theriaults' deed describes their property both by monuments and by courses and distances. The court properly found that the boundaries of land owned by the abutters Bickmore and Chute are monuments that define the Theriaults' northern boundaries. *Hodgdon v. Campbell,* 411 A.2d 667, 671 (Me.1980). But the deed also defines the southern boundary by monuments: the two stakes. The court has a duty to determine, if possible, the original locations of these stakes on the face of the earth. If they can be located, these monuments as a matter of law must prevail over the deed's course and distance calls. The deed's reference to the new Chute lot as the starting point, which is consistent with the original stake boundary, cannot be impaired by an auxiliary reference to the old Chute lot as a starting point, *Page v. Nissen,* 254 A.2d 592, 596 (Me.1969). No absurd result manifestly inconsistent with the intent of the deed is produced by the use of the monuments called out in the deed to define the disputed boundary. On remand the court may accept additional evidence relative to the plaintiffs' burden of proving the original location of the monuments. *Hodgdon, supra,* 411 A.2d at 671.

The entry is:

Judgment vacated. Remanded to the Superior Court for proceedings consistent with the opinion herein.

All concurring.

Bickmore

County Road

old Chute

new Chute

Theriault

disputed land

Murray

30 rod

8 rod

17 rod

20 rod

20 rod

10 rod

23 rod

50 rod

50 rod

A

B

C

D

E

N

Not To Scale