Richard GUILMET

v.

John GALVIN, et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 16, 1991.
Decided Oct. 17, 1991.

Thomas E. Humphrey, Roberts, Shirley & Humphrey, Springvale, for plaintiff.

guage "is authorized to consider," quoted above, to read "shall consider."

James B. Smith, Smith & O'Toole, Bidde-ford, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Defendants John and Barbara Galvin appeal from a judgment in favor of the plaintiff, Richard Guilmet, including treble damages, professional costs and attorney fees, entered in the Superior Court (York County, *Bradford, J.*) pursuant to 14 M.R.S.A. § 7552 (Supp.1990). They contend that the court's finding that their trespass and cutting of timber on the property of Guilmet was willful within the meaning of section 7552 was based upon insufficient evidence. We affirm the judgment.

Guilmet is the owner of two adjacent lots of land on Mousam Lake in Shapleigh, on which there is a cottage. As owners of two adjacent lots south of Guilmet's land, the Galvins share a boundary with Guilmet. In preparation for the construction of a house on their property, the Galvins cut and cleared trees in a triangular area of approximately 3630 square feet on Guilmet's property. Guilmet, who had not been contacted by the Galvins, was unaware of the cutting until several months after the area was cleared.[1]

Guilmet then brought a complaint against the Galvins pursuant to 14 M.R.S.A. § 7552. That section provides in pertinent part:

Whoever cuts down, destroys, injures or carries away any ... timber, wood, underwood ... of any kind from land not that person's own, without license of the owner ... is liable in damages to the owner in a civil action. If such an act or such acts are committed *willfully or knowingly*, the defendant is liable to the owner in treble damages, and, in addition, for the cost of any professional

services necessary for the determination of damages, for attorney's fees, and for court costs.

(Emphasis added.) At the trial of the matter before the court without a jury, the evidence established that the Galvins were not actually aware that the cutting was taking place on Guilmet's land. Accordingly, the court found the Galvins' conduct in cutting the trees was not "knowing" within the meaning of section 7552. The court, however, did find the cutting to be "willful" and assessed treble damages, professional costs and attorney fees. It is this finding that the Galvins dispute, contending that their actions did not rise to the level of willful conduct within the meaning of the statute.

As used in section 7552, "willfully" is a criterion implying a lesser degree of culpability than "knowingly."

> The use of the word "or" suggests at once that willfulness without actual knowledge of wrong doing will suffice to justify the imposition of double damages. We think therefore that it follows logically and almost automatically that the word "willfully" as used in this statute is intended to embrace conduct on the part of the defendant which displays an utter and complete indifference to and disregard for the rights of others. One should not be permitted to hide behind his lack of knowledge if he has meticulously avoided every means of acquainting himself with the truth. The statute impliedly recognizes that lack of knowledge is easily professed and with difficulty disproved.

*Blaisdell v. Daigle*, 155 Me. 1, 2, 149 A.2d 904 (1959) (applying a similar statute that provided for the imposition of double damages); *see also Nyzio v. Vaillancourt*, 382 A.2d 856, 863 (Me.1978).

■ The determination of whether conduct is willful within the meaning of sec-

---

1. The Galvins had begun construction of their home close to the Guilmet property line. After Guilmet complained to the Town of Shapleigh, a stop-work order was issued by the Town because the building excavation was too close to Guilmet's line. A subsequent request for a vari-ance by the Galvins was denied, and they had to cut back the foundation to bring it into compliance with the building code. Construction of the Galvin home continued during the pendency of this litigation.

tion 7552 is a question of fact, *see Grant v. Warren Bros. Co.*, 405 A.2d 213, 216 (Me. 1979); *Blaisdell*, 155 Me. at 4, 149 A.2d 904, and will not be set aside on appeal unless it is clearly erroneous. *Harmon v. Emerson*, 425 A.2d 978, 981–82 (Me.1981), M.R.Civ.P. 52(a).

 The evidence disclosed that the Galvins did make some effort to ascertain the boundary between their property and that of Guilmet. From a boundary marker near the shore line, the Galvins sighted back to septic system markers placed in the ground by a soil tester they had hired in connection with the construction of their home. Those markers were not correctly placed, however, and from those incorrectly placed markers, the Galvins sighted back farther to a boundary marker near the road. That marker did not mark the boundary between the Galvins and Guilmet as the Galvins had apparently assumed it did, but rather represented the midpoint between Guilmet's two lots. The result was the cutting of trees on Guilmet's land.

Those efforts by the Galvins to establish the boundary do not preclude the court's finding that the timber cutting was willful.[2] The Galvins were not aware of the location of their own boundaries. Despite that lack of knowledge, they made no attempt to contact Guilmet to ascertain the proper boundary line. Nor did they contact any neighbors in the area until the cutting had been completed. They did not hire a surveyor and made no examination of the metes and bounds indicated in their deed.

> The [court] could properly take into account that if the defendant[s] had taken even one of [those] steps [they] would have discovered the truth before any cutting occurred. The defendant[s] plead[ ] ... ignorance of the true facts but the [court] may well have concluded that [their] ignorance was self-imposed and

reflected utter indifference to the rights of others.

*Blaisdell*, 155 Me. at 3, 149 A.2d 904.

Although the evidence could support a finding that the tree cutting by the Galvins did not rise to the level of willful conduct, we will not substitute our judgment for that of the trial court. *Harmon*, 425 A.2d at 982.

The entry is:

Judgment affirmed. Remanded to the Superior Court for a determination of attorney fees for plaintiff on this appeal.

All concurring.

---

**2.** While the initial clearing was done by the Galvins, a professional tree cutter was hired to remove the rest of the trees in the area and to grind the stumps. The Galvins also hired an excavator to level and fill in the area. The court imputed the actions of the tree cutter and excavator to the Galvins based upon their principal-agent relationship. The court also found that a masonry contractor and lumber delivery-man hired by the Galvins trespassed and stored materials in the cleared area while litigation was pending despite Guilmet's requests to desist.