Roland L. **LEVASSEUR** and
Marcelle **Levasseur**

v.

**Gilbert E. DUBUC and Raymond Baril.**

Supreme Judicial Court of Maine.

May 2, 1967.

John G. Marshall, Lewiston, for plaintiffs.

Orville T. Ranger, Brunswick, for defendants.

Before WILLIAMSON, C. J., and TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

TAPLEY, Justice.

On appeal. Plaintiffs by complaint sought injunctive relief, both temporary and permanent, restraining the defendants from continuing the construction of a foundation and building, and a mandatory injunction commanding the defendants to set back the foundation and building to conform with the provisions of a zoning ordinance of the City of Lewiston. Plaintiffs also seek damages.

The case was heard by a single Justice who ex parte initially issued a temporary restraining order. It is from the final judgment found by the Justice below that the plaintiffs have appealed. Defendant Dubuc counterclaimed by alleging that plaintiffs, by causing the temporary injunction order to issue, have damaged him.

Complaint was dismissed as to defendant, Raymond Baril.

We apply the "clearly erroneous" test to the findings of the presiding Justice (M.R.C.P., Rule 52). That portion of the Lewiston Zoning Ordinance material and pertinent to this case reads as follows:

"Section 6. IN A RESIDENTIAL

ZONE:

*    *    *    *    *    *

"b. *SIDE YARDS* There shall be on each side of each building or pair of semi-detached buildings, a side yard of at least five feet from the lot line.

"c. *FRONT YARDS* There shall be in front of every building a front yard at least 15 feet deep from the sidewalk or lot line in new developments. In older built-up sections the front yard need be no deeper than the depth of the next neighbor nearest the 15-foot line or on the 15-foot line, provided that on a lot held under separate or distinct ownership from adjacent lots and of record at the time this ordinance becomes effective, and less than 100 feet deep at the time it is placed in a *Residential Zone*, no front yard need be deeper than fifteen percent of the depth of said lot."

The defendant is the owner of a lot of land abutting that of the plaintiffs. Defendant's land is located on the southerly corner of Burbank Street and East Avenue in Lewiston, Maine. Defendant desired to construct a building on his property. According to provisions of the zoning ordinance he was required to allow at least 5 feet from the building to the plaintiffs' lot line and at least a distance of 15 feet from the sidewalk on East Avenue.

According to the evidence the presiding Justice was warranted in finding that defendant Dubuc in May of 1964 was in possession of a building permit and by force of this license employed an engineer instructing him to locate the building on his lot 15 feet from the easterly line of East Avenue and 5 feet from his southerly line, which would be the northerly line of plaintiffs' property; that sometime in May, 1964, after some work had been done in excavating and putting in batter boards, further work was ordered stopped by the Building Inspector for the City of Lewiston. The evidence further develops the fact that after the stop order was issued a conference was had with the Corporation Counsel for the City of Lewiston, resulting in the stop order being revoked and resumption of construction by Mr. Dubuc. This construction continued until it was stopped by temporary restraining order.

Both sides to this litigation introduced expert testimony as to the boundaries of their respective properties, particularly concerning the northern boundary of plaintiffs' land and southern boundary of defendant's property. Defendant's witness places the defendant's building, at its southeasterly corner, 5.12 feet from plaintiffs' line, its southwesterly corner 5.05 feet from plaintiffs' line and the nearest point of the building to East Avenue at 14.81 feet. The surveyor witnessing for the plaintiffs found the southeasterly corner 3.97 feet from plaintiffs' line, the southwesterly corner 4.67 feet from plaintiffs' line and a distance from the nearest point of the building to East Avenue as being 14.15 feet.

The presiding Justice in his findings stated in part:

"There is no official record of the location of East Avenue. I am not satisfied that any expert witness could fix the easterly line of East Avenue with sufficient accuracy to base a finding that defendant's foundation is closer to the street than 15 feet at its nearest point. In any event, the deviation, if any exists, is negligible.

"I find that the most southeasterly corner of the defendant's foundation is approximately four feet from plaintiffs' lot line and the most southwesterly corner is about four inches closer to the lot line than is permitted by ordinance.

"The error in location is the result of honest mistake. The defendant proceeded in good faith on the reasonable assumption that he was in compliance with the law.

"To compel the defendant to remove his south wall and set it over about a foot would in my view put him to an expense and cause a hardship out of proportion to the benefit to be derived by the plaintiffs from such action. The plaintiffs' own dwelling is only slightly more than five feet from the lot line and the adverse effect upon the value of his property is primarily attributable to the proximity of the two buildings which might stand approximately ten feet apart without violation of law by either owner. Although without doubt the damage to the plaintiffs is somewhat increased by defendant's violation, reasonable monetary damages should suffice to make the plaintiffs whole.

"ACCORDINGLY IT IS ORDERED that judgment be entered for the plaintiffs for one hundred dollars and costs."

The Justice in his determination of distances found deviations of 1.03 feet between defendant's lot line and the southeast corner of defendant's construction and a difference of .33 feet at the southwesterly corner. He also found a deviation of .85 feet from the set-back requirement of defendant's construction at its nearest point to East Avenue.

■ Counsel for plaintiffs contend that a violation of the zoning ordinance constituted a nuisance, citing R.S.1954, Chap. 90–A, Sec. 61, II–H:

"Any real estate or personal property existing in violation of an ordinance *authorized by this section* is a nuisance." (emphasis supplied).

"He (the Justice below) found that the ordinance was clear and explicit; that it applied to the enlargement of the building in question; that the alterations increased the present size of the building; that the ordinance was constitutional; that by ordinance the new part of the building in question was forbidden; *that a structure erected contrary to the ordinance is a statutory nuisance*; that in such case the court cannot exercise discretionary power; that when the statute declares a certain condition to be a nuisance the court must hold it to be such, otherwise the statute would be rendered a nullity. (emphasis supplied).

\* \* \* \* \* \*

" \* \* \* the legal position taken by the sitting justice in his findings that the court in a case like the one at bar cannot exercise discretionary power was correct." City of Lewiston v. Grant, et als., 120 Me. 194 at 195, 196, 198, 113 A. 181, 182–183.

At the time of the alleged violation the statutory provision (R.S.1954, Chap. 90–A, Sec. 61, II–H) declaring a violation of a zoning ordinance to be a nuisance was effective under certain statutory requirements.

In order for the statutory declaration of a nuisance to be applicable a municipality enacting the zoning ordinance must have a planning board. R.S.1954, Chap. 90–A, Sec. 61, II–A.

On the effective date of the approval of the Zoning Ordinance for the City of Lewiston, being October 30, 1950, there was no provision in the enabling act providing that a violation of a zoning ordinance would constitute a nuisance. There is no provision in the ordinance to the effect that a violation would be deemed a nuisance. The ordinance does not provide for a planning board.

■ In view of the fact that the Lewiston Ordinance of 1950, and the enabling act under which it was adopted, are both silent as to the provision that a violation constitutes a nuisance, we hold that R.S.1954, Chap. 90–A, Sec. 61, II–H is not effective under the legal aspects of the instant case.

Under these circumstances the presiding Justice was clothed with equity powers in his treatment of the factual circumstances of the case.

"The power of equity is said to be co-extensive with the right to relief; it is as broad as equity and justice require. In the administration of remedies, an equity court is not bound by the strict or rigid rules of the common law, on the contrary, the court adapts its relief and molds its decrees to satisfy the requirements of the case and to protect and conserve the equities of the parties litigant. The court has such plenary power, since its purpose is the accomplishment of justice amid all of the vicissitudes and intricacies of life. It is said that equity has always preserved the elements of flexibility and expansiveness so that new remedies may be invented or old ones modified in order to meet the requirements of every case and to satisfy the needs of a progressive social condition. In other words, the plastic remedies of equity are molded to the needs of justice and are employed to protect the equities of all parties, and the flexibility of equitable jurisdiction permits innovation in remedies to meet all varieties of circumstances which may arise in any case." 27 Am.Jur.2d, Equity—Sec. 103.

"* * * a decree compelling the removal of an offending building will not be issued where the building can be put to a conforming use or where the violations are insignificant or where the violation has resulted from an erroneous but reasonable interpretation of the ordinance, * * *." The Law of Zoning and Planning (Rathkopf), Vol. 3, Chap. 66 66–26.

Coombs v. Lenox Realty Company, 111 Me. 178, on page 181, 88 A. 477, on page 478, 47 L.R.A.,N.S., 1085, contains some pertinent language:

" 'But it does not follow that a writ of mandatory injunction should be granted in all cases. It is a discretionary writ.

The discretion, however, is not an arbitrary one, but is to be exercised in accordance with settled rules of law. The rules by which I think this case must be tested are stated in Lynch v. Union Institution for Savings, 159 Mass. [306] at page 308, 34 N.E. at page 364, 20 L.R.A. 842, in these words: "In general, where a defendant has gone on without right and without excuse in an attempt to appropriate the plaintiff's property, or to interfere with his rights, and has changed the condition of his real estate, he is compelled to undo, so far as possible, what he had wrongfully done affecting the plaintiff, and to pay the damages. In such a case a plaintiff is not compelled to part with his property at a valuation, even though it would be much cheaper for the defendant to pay the damages in money than to restore the property. * * * On the other hand, where, by an innocent mistake, erections have been placed a little upon the plaintiff's land, and the damages caused to the defendant by removal of them would be greatly disproportionate to the injury of which the plaintiff complains, the court will not order their removal, but will leave the plaintiff to his remedy at law. * * * The doctrines applied by the court of equity in cases of this kind call for a consideration of all the facts and circumstances which help to show what is just and right between the parties." ' "

■ The Justice below, in effect, found a violation on the part of the defendant. This case, not involving a statutory nuisance, was properly decided on equitable principles. The Justice in the application of his discretionary powers found that a mandatory injunction compelling the defendant to move his south wall about a foot would put him to an expense and cause him a hardship out of proportion to the benefit to be derived by the plaintiffs. He determined that a money judgment of $100. would suffice to compensate the plaintiffs. We find no error in the single Justice's findings.

■ Counsel for plaintiff in their brief mentioned the claimed inadequacy of damages in light of the evidence on damages. Counsel in their points of appeal did not allege inadequacy of damages as error; therefore this question is deemed to have been waived. Rule 75(d), M.R.C.P.

The entry will be,

Appeal denied.

WEBBER, J., did not sit.